Good morning, your honor. My name is Susan Champion, and I'm here on behalf of my client, Malcolm McGee, who's currently serving a mandatory life sentence for a nonviolent drug crime. He's already served over two decades in prison for this nonviolent drug crime. And as noted by the court below, there's no question that Mr. McGee's sentence would be substantially lower where he's sentenced today. But the question here is whether a court is strictly bound by the sentencing guidelines commentary in section 1B1.13 on considering a petition for release under section 3582. We respectfully submit that they are not strictly bound by these guidelines. And in accord with Judge Briscoe's recent concurrence in Rodriguez, we urge this court to follow all other circuits that have addressed this issue and to remand this case to the district court for consideration on the merits. Last year, after exhausting other remedies, Mr. McGee filed a petition for compassionate release under 18 U.S.C. 3582 in the Northern District of Oklahoma. And he was able to file this petition thanks to Congress's expansion of section 3582, which now allows individual defendants to file petitions for compassionate relief directly to the court rather than having to wait for BOP to do so. The court below denied relief for Mr. McGee on the ground that because Congress had not explicitly made the amendments to the section under which he was sentenced retroactive, reducing his sentence would usurp Congress's power. However, multiple courts have rejected this rationale and have used amended section 3582 to review defendant-initiated motions for compassionate release and to apply the sentencing factors articulated in section 3553. What do we do with the policy statement? Do we apply it at all? Do we use it as a guideline? So courts have approached this in multiple ways and, as I said, all the circuits and a majority of district courts have all agreed that they can use this section for extraordinary and compelling circumstances. We argue that the guidelines do not apply. The guidelines specifically reference BOP-initiated motions for compassionate release and, therefore, the extraordinary and compelling circumstances are now in the hands of the courts to make those decisions when a defendant is able to directly appeal to the court. But don't we have the statute that mandated the Sentencing Commission to issue new guidelines to follow on with this new First Step Act? So don't we have some indication, at least from Congress, that we should pay some attention to the Sentencing Commission? So what I would argue here is that we need to look at the intent of bringing this expansion forward. Congress specifically wanted to expand the use of compassionate release and has instructed the courts to make those determinations. The guidelines themselves, as we assert, do not apply to defendant-initiated motions and that does not mean that courts should sit on their hands while waiting for the Sentencing Commission to amend guidelines. Courts have and do use their discretion to grant these petitions based on a consideration of the merits of the case. Well, when you're using that discretion as a district court, couldn't you sort of noodle through the policy statement and say, well, that's a good thing to think about, I'll think about that, and here's some other things? Certainly some courts have done that and that is purely within the district court's discretion to consider whatever guidelines they might find valuable in making that assessment. But again, we argue that... Isn't that the problem, though, counsel, is that it's purely in their discretion whether to look at the guidelines or look at the policy statement? They can if they want, they don't have to. How would we then review the district court's actions for an abuse of discretion? What are we reviewing? So many courts below have certainly made determinations that, you know, individuals that make these motions have a variety of extraordinary and compelling reasons. And so long as the court is able to articulate those, it is certainly within the appellate court's purview to consider whether those articulated reasons meet the standard. Listen to that, that's pretty subjective what each perhaps what each district judge might feel is compelling or extraordinary and their level of compassion. I mean, you see what I'm saying? How do we, how do we review whatever their reasons are for granting or not granting? Or for not granting, I'm sorry. Of course, and I understand, I understand the issue. That's the problem I see it as is what, what is, you know, arguably that is unfettered discretion and that's not what Congress intended. Well, what we do know is that Congress intended for an expansion of the appellate court's discretion to consider long sentences and other factors. And they did leave it quite, quite open in terms of what factors people could consider, courts could consider. So our argument then is no different from other situations in which a court makes a determination based on articulated factors about whether somebody meets the extraordinary and compelling circumstances. And then it would be an abuse of discretion argument to the appellate court. And appellate courts have been able to address those on a case by case basis as necessary. So you're, you're, you're analogizing these types of cases, notions to reduce cases with just a straight sentencing where the district court now after Booker et al can now exercise its own discretion to, to go and do whatever it wants, regardless of the guidelines. Yes, Your Honor. So as Judge Moritz says, unfettered discretion, we have opened the floodgates. And, and what I will argue is that the floodgates are not necessarily open. Petitioners are able to present their compelling case, their extraordinary circumstances, and district courts will have the opportunity to review them and make a determination of whether those, that case is sufficient, whether the case made by the petitioner is sufficient. Multiple courts have been addressing petitions like this, and there does not appear to be a deluge, an unmanageable deluge for the court to address these types of petitions. And again, you know, it's important to focus on the origin and intent of this expansion. Congress felt that not enough of these petitions were being brought to courts and that petitioners should be able to take advantage of this particular avenue of relief and granted them that opportunity. So what relief are you seeking from us? We are asking that this court remand this case back to the district court for a review of the merits. Again, there's no question Mr. McGee is serving a life sentence for a completely nonviolent drug crime. He's been in prison for 20 years and has a spotless record. There are multiple factors related to Mr. McGee that fit squarely within reasons for considering seriously a petition for compassionate relief. There are three particular changes in law that would mandate that he not be subject to a mandatory life sentence, and his disciplinary record is almost spotless. He has strong family ties. He is positioned for success in the community. There are multiple reasons that the district court should consider these merits and make a determination. And that's all we're asking, Your Honor. We're just asking that the district court have the opportunity to review the case fully on the merits. Do we apply the policy statements of the Bureau of Prisons? Well, our argument is no. That is a Bureau of Prisons policy statement. Petitions brought under 3582, but directly by a defendant, now lie within the court's jurisdiction, the court's authority to make those determinations and to use whatever factors they consider relevant to that determination, including the sentencing factors articulated in 3553. What's your best case that would allow us to rule in your favor? Well, I would point to Mau Mau, which I believe was argued and was, you know... Any appellate court ruling? It was recently argued in the appellate court. No, I know. I'm on the panel. Any ruling from an appellate court? Any ruling from an appellate court? So there are multiple rulings. The Second Circuit, I believe, Brooker in the Second. The Fourth Circuit... So of these cases where we have an appellate court ruling, what's the best case? The best case is going to be Brooker from the Second Circuit, which holds that 1B.1.13 is not applicable to 3852 motions filed by defendants. And also, I would say United States v. Gunn from the Seventh Circuit, which states that the guidelines manual lacks an applicable policy statement covering prison because of that. It does not curtail a district judge's discretion because any decision is consistent with a non-existent policy statement. To say that last part again, because any what? Because any decision is consistent with a non-existent policy statement. And then I would also point to United States v. McCoy out of the Fourth Circuit. And then finally, United States v. Jones in the Sixth Circuit. Did any of those courts describe what they think should guide the court's discretion? Should it look to the policy statement and essentially substitute the court for the Bureau of Prisons? So in those cases, the appellate court said that the statements don't apply. And they basically argue and are in line with Jones, which says that district courts have full discretion to define what extraordinary and compelling reasons are without consulting the policy statement. And again, because it's discretionary, I'm not going to say that a court can't look at something because it is within the court's authority to consider whatever the court has to say. I think all of these cases very strongly reject the proposal that a court is bound by these guidelines. And if there are no further questions, I'll save my time for rebuttal. Thank you. Thank you. Ready to hear from the government? May it please the court. My name is Lena Alam. I represent the United States. I'd like to first begin by apologizing for a rather glaring error in my brief. On page three, I say that on remand, originally, the district court resentenced Mr. McGee to 96 years on count three of the indictment. Rather, he decreased the sentence to 96 months. I'm sorry, that was a pure oversight. Next, I'd like to talk a little bit about the standard of review, because there's a fundamental disagreement in the party's briefs. And the reason for that is this. Our view of Judge Egan's order in this case is that she, in denying Mr. McGee's motion, exercised her discretion, recognizing that she could have found that Congress's changes in provided an extraordinary and compelling reason under the other reasons provision of Note 1D to 1B1.13 to reduce Mr. McGee's sentence, but that she found that it was inappropriate to do so, because doing so would usurp Congress's authority. And so for that reason, because Judge Egan's order, and this is, I believe, at pages 75 and 76 of the appellate's appendix, because that order displays Judge Egan's exercise of that discretion that she believes she has to determine what types of reasons are extraordinary and compelling, that this case, unlike the Mamau case currently before the court, doesn't provide a vehicle to make the determination of whether, in the first instance, district courts have that discretion. So... I'm not going to rule in favor or consider this even because I thought her statement was she lacked authority. And if that's her statement, isn't that a legal conclusion? That's not an abuse of discretion question. She, Judge Egan did not say that she lacked the authority to do so in her reasoning. What she said was that Congress chose not to make Section 401 retroactive, and that to utilize the other reasons commentary under 1B1.3 and 3582 instead, to get the same result, would usurp the power given exclusively to Congress. In other words, she has no authority at all. I mean, the power given exclusively to Congress that she references there is the power to make that 401 retroactive. The reason that that reveals an exercise of her discretion under 1B1.13, applying the Sentencing Commission's policy statement, is because she is not deferring to, under 1D, the Director of the Bureau of Prisons. Her deference here is to the original decision by Congress in enacting Section 401 of the First Step Act to not make that provision retroactive. She is not there talking about the power delegated by Congress to the Sentencing Commission and then the Sentencing Commission to the Director of the Bureau of Prisons. Oh, all right. Well, if that is, if I think I understand what you're saying, and I'm not sure I did understand your argument before, but if that's what you're saying, why didn't she abuse her discretion then? If she actually did exercise her discretion, why wasn't that an abuse of discretion to believe that she could not find that an extraordinary and compelling reason under 3582 C1a, when really there's nothing to guide her discretion if we agree with appellant here? There is something to, well, if you agreed with appellant here, the guidance of the court's discretion would be at least in part in 1B1.13 as not binding, but as providing a background. The difference I think here between how we think Judge Egan exercised her discretion and how appellant would have this court give all district courts discretion is that here, Judge Egan in reading subsection 1D recognized that the court had exercised discretion under that specific provision to define other reasons. She did not read 1B1.13 out entirely. She did not find it inapplicable. In fact, in the following sentence of her order, she says further, there are no other factors cited by the defendant that correspond with the requirements specified by the Sentencing Commission to define extraordinary and compelling circumstances under 1A through C. Wasn't that an error though for the court to believe that she needed to apply 1D or decide whether there were other factors because if that doesn't constrain her, wasn't that an error all by itself? If the court accepts appellant's position that 1B1.13 is not applicable, then that does not mean the district court can't consider those factors in exercising her discretion. But we don't know if that's what she did here. It seems to me that the way she worded this one paragraph order is she believed that those factors absolutely did constrain her because then she goes on to say further, there are no other factors cited by defendants that correspond with the requirements specified by the Sentencing Commission to define extraordinary and compelling reasons. So she seems to be referring to the policy statement here and she seems to believe that guides her and I'm saying was that an abuse of discretion since if we agree with the defendant here that it doesn't apply. And to the extent that she correctly identifies that the provision under which or that she had discretion to consider reasons that go beyond 1A through C under the other reasons provision of 1D, then it was nonetheless not an error, an abuse of her discretion because she recognized that she had the discretion to go beyond the three reasons in 1A through C and that to define for herself what reasons would qualify under the other reasons provision not constrained by the reasons identified by the director of the Bureau of and because the retroactive use of the non-retroactive provision in 401 would clearly be outside of the reasons that had been given by either the Sentencing Commission or in the Bureau of Prisons Policy Statement. And so by considering that as a reason that she might have used under the other reasons provision, Judge Egan revealed that she was at least considering her discretion to find other reasons apart from those reasons that the Sentencing Commission and the Director of the Bureau of Prisons had identified. So if she denied this motion on the merits, which is what you're saying she did? Yes. What was her reasoning? What was her support for denying it? That Mr. McGee's situation was not was not sufficiently extraordinary and warrant sentencing relief to warrant a sentencing reduction here. And in doing so, Judge Egan was vindicating the congressional intent both of the Congress that initially judged that an appropriate punishment for Mr. McGee's crime at the time that is trafficking more than six kilograms of PCP after two prior drug felony convictions was mandatory life. She was also vindicating the congressional judgment in the First Step Act, which was that although some defendants going forward for that type of offense with those prior felonies would not merit a life sentence, Congress chose not to make that change retroactively applicable precisely to defendants like Mr. McGee. And that reason, I think, underpins our other point with which, of course, as you know, the second, fourth, sixth and seventh circuits have disagreed with, but that the the sentencing reduction provision in 3582 C1A cannot be read so broadly as to allow district courts to undermine congressional intent, not just in requiring that the sentencing commission, not district courts, describe what constitutes what types of factors may be considered as extraordinary and compelling, but those congressional determinations in the first instance about what kinds of sentences, mandatory sentences, are required under certain circumstances. To read 3582 C1A as broadly as the second, fourth, sixth, and seventh circuits have is to completely undercut congressional intent in imposing mandatory minimum sentence and to allow courts unfettered discretion, as we've discussed, to reduce sentences in any event. And going back to Judge Briscoe's question earlier, the full sentencing discretion that reading 1B1.13 out of the guidelines would confer would be consistent with original sentences. And it is clear from the language in the Sentencing Reform Act, from the legislative history of the Sentencing Reform Act, that in adopting 3582 C as a sentence reduction provision, that that provision was not meant to confer full sentencing discretion. That sentencing modification procedures under 3582 C were meant to be something less than a full resentencing. Well, you've talked a lot about congressional intent, but we also have to put on the scale the congressional intent behind the passage of the First Step Act, which was to increase the number of inmates released for under compassionate release provision. And absolutely. And the change that they actually made to the provisions of 3582 C1A have had precisely that effect. As the court heard in the Mau Mau argument, compassionate release motions have gone up dramatically, as have compassionate release grants, because Congress's intent wasn't to change the standards to be applied in granting compassionate release. It was to change the gatekeeper. And the difference here is in the prefatory language to 1B1.13 and in 3582 C, or in 1B1.13 and 3582 C referring to a motion by the was changed in the First Step Act, who the gatekeeper was. What specifically wasn't changed in the First Step Act was what standards would be applied once those motions were filed. And the effect that Congress sought in expanding the availability of relief under the compassionate release statute has already been achieved by avoiding the problem of the director of the Bureau of Prisons not filing motions in the first instance, where defendants were plainly eligible for compassionate release. Now that defendants can file those motions for themselves, they are able to get access to the courts, and the court can grant those motions. Well, the point I think becomes as we narrow this down, the point becomes, as regards your gatekeeper, and if it's the district court, can the district court must look at 1.1B, the guideline? 1B1.13, 1B the other reasons? Yes, 1B1, the sentencing guideline, must it look at that, which is what the district court did here. The district court did look at 1B1.13 here, and in fact, yes, courts must continue to look at 1B1.13, which is the applicable policy statement, because Congress told them they must. But Congress didn't say that. Congress didn't say that. Congress said, and that's such a reduction, which is for extraordinary and compelling reasons, and this is 3582, and that such a reduction is consistent with applicable policy statements. That's what Congress said, and what possibly could make this applicable when it opens up with the lines, upon motion by the director of the Bureau of Prisons? I don't understand how you can say that Congress intended that that existing policy statement, which doesn't apply, fits those clear words. Well, saying it doesn't apply begs the question somewhat, but the reason it remains applicable is because the sentencing commission adopted that, and in fact, the title of 1B1.13 shows that it is the policy statement the sentencing commission intended to apply to 3582C1A, and it remains applicable even if it must be read to incorporate the addition of the gatekeeper, because the language at the beginning, I see my time is up, may I finish my answer? Go ahead, please. The language, the addition of another gatekeeper, of someone else who could file a motion to the statute, should be read into the first paragraph of 1B1.13, because that language is nearly identical to the statute, and so it does not implement the congressional directive under 994T, 28 U.S.C. 994T. Really, the purpose for that policy statement was to set standards, not to identify the gatekeeper, so Congress delegated to the sentencing commission the ability to set standards for what constitutes extraordinary and who gets to file the motion in the first instance, and so when Congress changed who gets to file the motion in the first instance, that change can easily be applied, and the fact that that particular sentence of the guideline is no longer consistent doesn't matter, because that's not the part of the guideline that Congress directed the sentencing commission to adopt, and those parts where the standard. Well, it hasn't fulfilled the congressional mandate. The congressional mandate is to pass and create policy statements that are applicable to the First Step Act, and they have not done that because they don't have a quorum, and so we're left in this netherland. The government believes that the policy statement can be read to still provide the standards that Thank you. Thank you, counsel. We have your argument. Rebuttal? You're on mute. Apologies. I would just refer the court to the title of the amendment, which is to increase and expand, increase the use and transparency of compassionate release. That was congressional intent. Multiple reforms to the laws have also expressed congressional belief that these extreme sentences for particularly clients like mine, Mr. McGee, completely non-violent offender, are too harsh, and Congress's change to 3852 or 3582 was specifically in recognition of the fact that not enough individuals were being brought to the courts for consideration of compassionate release, and this offers the courts an opportunity to use their discretion to do so. I just want to stress, for example, that many, many circuits and district courts have been providing this sort of relief. They have found that they have discretion, and many individuals with perhaps more serious offenses and who have served far less time than my client have been able to take advantage of this relief, and I would just urge the court to follow the other circuits and the majority of district courts by allowing Mr. McGee to present his compelling and extraordinary case to the district court for consideration on the merits. Thank you. Thank you, counsel. Thank you both for your arguments this morning. The case is submitted.